UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ANIL KINI,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>TATA CONSULTANCY SERVICES, LTD.,<br><br>　　　　　Defendant. | Civil Action No. 17-cv-2526 (TSC) |

**MEMORANDUM OPINION**

　　Relator Anil Kini filed this action against Tata Consultancy Services, alleging that Defendant violated the False Claims Act ("FCA") by failing to obtain H-1B visas for, and pay the proper H-1B wage rate to, employees who were engaged in H-1B visa work, as well as retaliating against Relator for investigating the scheme. Relator's allegations, however, do not state a claim for relief because Defendant was not obligated, within the meaning of the FCA, to pay higher payroll taxes for its employees or pay application fees for applications it never sought. Relator, in turn, was not engaged in an investigation that could reasonably lead to a FCA case, and therefore failed to state a retaliation claim as well.

　　Thus, having considered the record and the parties' briefing, the court will GRANT Defendant's Motion to Dismiss, ECF No. 24.

　　　　　　　　　　**I.　　BACKGROUND**

　　Relator Anil Kini is a U.S. permanent resident who worked for Defendant for over a decade. Am. Compl., ECF No. 39-1, ¶¶ 4, 29–30. Relator initially worked for Defendant in India, but in 2012, was relocated to the United States on an L-1A visa to serve as a consultant

and was eventually promoted to Business Relationship Manager. *Id.* ¶¶ 29, 31. Defendant is a multinational corporation that provides IT-related services headquartered in India with 22 offices in the United States. *Id.* ¶¶ 5, 12. Most of Defendant's U.S.-based workers have H-1B, L-1 or B-1 visas. *Id.* ¶¶ 11, 14. H-1B visas are for foreign workers in specialty occupations requiring theoretical or technical expertise, *id.* ¶ 15, L-1 visas are for management-level employees and subject matter experts, *id.* ¶ 22, and B-1 visas are for consulting with business associates, traveling for business meetings and conventions, and other temporary business activities, *id.* ¶ 26.

To apply for an H-1B visa, an employer must submit a Labor Condition Application ("LCA"), attesting that the job actually exists and that it will pay the employee a required wage rate, *id.* ¶ 17, and pay application fees of approximately $6,460 per visa, *id.* ¶ 21. Because H-1B visas are limited and highly sought after, companies must compete for them through a lottery system. *Id.* ¶ 19. L-1 visas are not similarly capped and an application for an L-1 visa costs approximately $1,000 less than an H-1B visa. *Id.* ¶¶ 23, 25.

Relator alleges that Defendant engages in two related fraudulent schemes. First, to quickly staff "cheap visa employees" in U.S. jobs, Defendant "submits far more petitions for H-1B visas than it has open positions" to maximize its chances of securing the highest number of visas through the lottery system, *id.* ¶ 34, and then "pays these workers less than the required wage, in violation of the U.S. visa laws," *id.* ¶ 36. Consequently, Defendant pays significantly lower payroll taxes to the U.S. government than it would have to if it paid its H-1B visa employees at the proper rate. *Id.* ¶¶ 44, 89.

Second, Defendant "improperly secures" L-1 and B-1 visas for IT employees working in non-managerial roles and positions that do not require specialized knowledge of the company.

*Id.* ¶¶ 45, 60.  Put another way, Defendant uses L-1 and B-1 visas—which are easier to obtain—for employees that require harder to obtain H-1B visas.  To do so, Defendant "falsifies individuals' job titles and work responsibilities" on their visa applications, *id.* ¶ 45, and takes steps to mask its deception from United States Customs and Immigration Services during visits, *id.* ¶ 48.  Relator alleges that this scheme wrongfully deprives the government "of significant visa application fees," because L-1 and B-1 visas fees are less expensive than H-1B visas.  *Id.* ¶¶ 59, 61, 90.

On May 1, 2017, Relator submitted an initial whistleblower report to Defendant's CEO detailing the fraudulent visa practices.  *Id.* ¶ 63.  Over the course of the next year, Relator submitted three follow-up reports and discussed his reports with an independent investigator Defendant retained to assist in verifying the allegations.  *Id.* ¶¶ 64–72.  Relator alleges that Defendant retaliated against him starting on May 1, 2017, by cutting his pay, stalling his promotion, removing him from projects, and eventually terminating him.  *Id.* ¶¶ 73–81.

Relator filed the initial Complaint under seal on November 22, 2017.  *See* Compl., ECF No. 1.  The United States declined to intervene.  *See* Notice of Election to Decline Intervention, ECF No. 15.  Accordingly, the court unsealed the Complaint.  Order, ECF No. 16.  While awaiting the United States' decision on intervention, Relator was terminated from his position.  Am. Compl. ¶ 30.  He therefore filed an Amended Complaint, *see* ECF No. 39-1.

In the Amended Complaint, Relator alleges two violations of the FCA: (1) that Defendant falsely attested and falsified wage information in LCAs for H-1B visas and fraudulently applied for cheaper L-1 and B-1 visas for work it knew required an H-1B visa, thus decreasing its payroll tax obligation, underpaying H-1B visa employees, and fraudulently directing employees to perform work that required an H-1B visa who did not have that visa, in violation of 31 U.S.C.

§ 3729; and (2) that Defendant retaliated against Relator for reporting its fraudulent conduct and refusing to participate in subsequent acts of visa fraud, in violation of 31 U.S.C. § 3730(h).  Am. Compl. ¶¶ 97–106.  Defendant moved to dismiss, ECF No. 24.

## II.     LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 9(b)

A plaintiff alleging fraud "must state with particularity the circumstances constituting" the fraud.  Fed. R. Civ. P. 9(b).  To plead fraud with particularity, the plaintiff must "set[] forth in sufficient detail the time, place, and manner" of the fraudulent scheme, *U.S. ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 123 (D.C. Cir. 2015), including "who precisely was involved in the fraudulent activity," *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1257 (D.C. Cir. 2004).  If the plaintiff fails to plead fraud with particularity, the court will dismiss the claim.  *See, e.g.*, *id.* at 1256–59 (affirming dismissal of fraud claim under the FCA pursuant to Federal Rule of Civil Procedure 9(b) where the plaintiff failed to plead fraud with particularity).

### B.     Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).

In deciding a motion to dismiss, the court presumes the truth of the factual allegations in the complaint and affords the plaintiff "every favorable inference that may be drawn from the allegations of fact."  *Laughlin v. Holder*, 923 F. Supp. 2d 204, 208–09 (D.D.C. 2013) (citing

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The court does not, however, "accept as true 'a legal conclusion couched as a factual allegation,' nor inferences that are unsupported by the facts set out in the complaint." *Id.* at 209 (citation omitted).

### III.   ANALYSIS

**A.   Count One**

Count One alleges that Defendant falsely attested and falsified wage information in LCAs for H-1B visas and fraudulently applied for cheaper L-1 and B-1 visas for work it knew required an H-1B visa, thus decreasing its payroll tax obligation, underpaying H-1B visa employees, and fraudulently directing employees without H-1B visas to perform work that required an H-1B visa, in violation of 31 U.S.C. § 3729 (a "reverse false claim").  Am. Compl. ¶¶ 97–101.

*i.   Pleading requirements for a reverse false claim*

The FCA punishes any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). A "reverse false claim is any fraudulent conduct that results in no payment to the government when a payment is obligated." *U.S. ex rel. Scott v. Pac. Architects & Eng'rs*, 270 F. Supp. 3d 146, 155 (D.D.C. 2017) (citation omitted).  As relevant here, to state a reverse false claim, the relator must allege with particularity that the defendant's actions affected an "obligation" to pay or transmit money or property to the government.  *See* 31 U.S.C. § 3729(a)(1)(G); Fed. R. Civ. P. 9(b).

The FCA defines the term "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any

overpayment." 31 U.S.C. § 3729(b)(3). In construing this definition, the D.C. Circuit has held that "an unassessed potential penalty for regulatory noncompliance does not constitute an obligation that gives rise to a viable FCA claim." *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 67 (D.C. Cir. 2008); *accord U.S. ex rel. Schneider v. JPMorgan Chase Bank*, 878 F.3d 309, 315 (D.C. Cir. 2017) (potential exposure to penalties is not an "obligation"). Nor does the government's ability to pursue reimbursement for overpayments or fraudulently induced payments. *U.S. ex rel. Morsell v. NortonLifeLock, Inc.*, 651 F. Supp. 3d 95, 189–90 (D.D.C. 2023).

The FCA, moreover, "does not apply to claims, records, or statements made under the Internal Revenue Code." 31 U.S.C. § 3729(d). The Second Circuit applies this "tax bar" provision to a FCA claim if the "case depends entirely on a purported violation of the Tax Code" and "the IRS has authority to recover the precise amounts [the plaintiff] is seeking." *U.S. ex rel. Lissack v. Sakura Glob. Cap. Mkts., Inc.*, 377 F.3d 145, 153 (2d Cir. 2004). That test is in keeping with the tax bar's intent to "reserve[] discretion to prosecute tax violations to the IRS and bar[] FCA actions based on tax violations." *Id.* at 152–53 (citations omitted). Defendant argues that courts in this district have adopted a broader reading of the tax bar than the Second Circuit, but that is not the case. *See* Def.'s Mot. to Dismiss, ECF No. 24 at 19 ("Motion"). Rather, courts in this district have merely recognized that obligations to pay taxes arising from the Internal Revenue Code cannot support a viable FCA claim. *See, e.g.*, *Canen v. Wells Fargo Bank, N.A.*, 118 F. Supp. 3d 164, 170 (D.D.C. 2018) (citing 31 U.S.C. § 3729(d)); *accord Ananiev v. Freitas*, 37 F. Supp. 3d 297, 307 (D.D.C. 2014). Although its decision is not binding, the Second Circuit's test for determining whether the tax bar provision applies is well-founded, and the court finds it persuasive.

### ii.     *Relator failed to plead a reverse false claim with particularity*

Relator claims that Defendant "falsely attested and falsified wage information in LCAs for H-1B visas," "wrongfully decreased its obligation to pay the U.S. government payroll taxes by fraudulently and unlawfully underpaying H-1B visa employees," and "decreased its obligation to pay H-1B visa application[] fees by fraudulently applying for cheaper" visas and for H-1B visa work.  Am. Compl. ¶¶ 98–99.  Those claims fail because Defendant did not have an "obligation" under the FCA to pay its employees higher wages.  Accordingly, the court need not reach the issue of whether Relator properly alleged that Defendant acted "knowingly."

The D.C. Circuit has clearly stated that "an unassessed potential penalty for regulatory noncompliance does not constitute an obligation that gives rise to a viable FCA claim." *Hoyte*, 518 F.3d at 67.  Thus, even though Relator alleges that Defendant took unlawful actions—underpaying employees and failing to obtain the proper visa for those employees—those actions are regulatory violations that may give rise to potential penalties, not "established dut[ies]."  31 U.S.C. § 3729(b)(3).  As in *Hoyte*, Defendant did not have "an obligation to pay or transmit money to the Government," but rather, engaged in "mere regulatory noncompliance."  518 F.3d at 68.

Relator's arguments to the contrary are unpersuasive.  First, he argues that unassessed penalties are "obligations" under the FCA if their assessment do not require the exercise of government discretion.  Relator's Opp'n to Def.'s Mot. to Dismiss, ECF No. 32 at 16–18 ("Opp'n").  But that argument is inconsistent with *Hoyte,* which emphasized the need for a present "obligation to pay or transmit money" to the government.  518 F.3d at 68.  Nor does Relator's argument that unassessed penalties can be "obligations" if they do not involve government discretion align with the FCA's purpose.  As the D.C. Circuit has recognized, a 2009

amendment to the FCA "modified its language to require that an obligation be 'established,'" thus confirming that "unassessed" penalties do not give "rise to a viable FCA claim." *Schneider*, 878 F.3d at 315 (citations omitted). And as the Supreme Court has explained, the FCA is not a "vehicle for punishing garden-variety . . . regulatory violations." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 194 (2016). Extending an "obligation" under the FCA to non-discretionary fees, fines, or penalties would undermine the purpose of the 2009 amendment and render "garden-variety" regulatory violations FCA cases.

Second, Relator contends that Defendant owed a payroll tax obligation because although it owed and paid these taxes, it underpaid them. Opp'n at 18–19. But Relator does not allege that Defendant's payroll tax contribution did not accord with the wages it paid its employees. *See* Am. Compl. ¶ 89 ("[B]y fraudulently certifying and failing to pay its H-1B employees the required wage rate, [Defendant] has reduced the amount of federal payroll tax it otherwise would have been required to pay the federal government."); Opp'n at 35–40 (explaining that Defendant did not violate the Tax Code, but rather, underpaid its employees, indirectly resulting in tax underpayment). Thus, any obligation to pay higher payroll taxes was contingent on Defendant paying its employees at higher rates. At bottom, Relator's claim is that Defendant violated immigration laws by failing to pay its employees at the required H-1B visa rate; not that Defendant engaged in a fraudulent scheme to underpay the government in violation of the FCA.

Finally, Relator argues that Defendant had an "obligation" to apply for H-1B visas, and thus, had an obligation to pay the fees for those applications. Opp'n at 20–28 (citing *U.S. ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189 (10th Cir. 2006); *Franchitti v. Cognizant Tech. Sols. Corp.*, 555 F. Supp. 3d 63 (D.N.J. 2021)). Once again, Relator's theory is too attenuated. "The lesson of *Hoyte* is that, in the absence of acknowledged liability, whether an 'obligation' exists

Page 8 of 14

depends entirely on what the relevant legal instrument . . . requires a party to do" in a "self-executing" manner.  *U.S. ex rel. Landis v. Tailwind Sports Corp.*, 160 F. Supp. 3d 253, 272 (D.D.C. 2016).  In other words, had Defendant applied for H-1B visas, regulations would have created an obligation for it to pay the application fees.  But here, Defendant did not owe application fees because it did not apply for H-1B visas; it applied for L-1 and B-1 visas.

*Conagra* and *Franchitti* do not tip the balance in Relator's favor.  First, *Conagra* is distinguishable.  The Tenth Circuit there held that the defendant had an "obligation" to pay fees for replacement certificates once the government determined its original certificates contained major errors and that replacement certificates would be necessary.  465 F.3d at 1202–03.  Here, in contrast, the government did not determine that Defendant needed to apply for H-1B visas rather than L-1 or B-1 visas.  In any event, to the extent that *Conagra* held that application fees are "obliged" for certificates the defendant did not apply for, "*Conagra*" is "flatly inconsistent with the D.C. Circuit's reasoning in *Hoyte*."  *Landis*, 160 F. Supp. 3d at 272.

*Franchitti* is likewise unpersuasive.  In that case, the District of New Jersey held that there was "implied contractual" relationship between the government and the defendant because the defendant "desired" an H-1B visa, despite obtaining L-1 and B-1 visas instead, and thus was required to "pay the appropriate fee for" the H-1B visa.  555 F. Supp. 3d at 71.  But the notion that Defendant "desired" H-1B visas rests on a legal fiction, not Relator's allegations.  Relator did not allege that Defendant sought H-1B visas or hoped to receive H-1B visas when it applied for L-1 and B-1 visas.  Rather, Relator alleged that Defendant sought and received L-1 and B-1 visas where, according to statutes and regulations, Defendant should have instead sought H-1B visas.  Those allegations do not support a conclusion that Defendant here "desired" H-1B visas.  Indeed, *Franchitti* reached a different conclusion than *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d

293, 940 (N.D. Cal. 2019), which also addressed a similar fact pattern and held that "the obligation to pay the government only arises upon *applying* for a visa." The court concurs with *Lesnik*.

The court, however, declines Defendant's invitation to apply the tax bar. Defendant argues that the court should apply the FCA's tax bar provision to dismiss Relator's reverse false claim because it relates to payroll taxes. Motion at 19–21. That argument is unpersuasive because Relator's claim does not rest on a violation of the Tax Code and the IRS does not have authority to recover the amount Relator seeks. *See Lissack*, 377 F.3d at 152–53. As Relator explained, the Immigration and Nationality Act ("INA")—not the Tax Code—obliges Defendant to pay H-1B visa holders a required wage rate. *See* Opp'n at 39. Thus, Relator does not allege that Defendant violated the Tax Code by underpaying payroll taxes for H-1B visa employees, but rather, that Defendant underpaid H-1B visa employees, thus making its tax obligations lower than they otherwise would have been if it had complied with the INA. And the INA's wage-requirement provision is enforced by the Secretary of Labor, not the IRS. *See* 8 U.S.C. § 1182(n)(2)(A), (D), (G). Consequently, the tax bar is inapplicable.

In sum, Relator failed to state a reverse false claim because, tax bar aside, he did not allege that Defendant had an "obligation" to pay higher payroll taxes or H-1B visa application fees to the government. The court will therefore grant Defendant's motion to dismiss Count One.

**B.     Count Two**

Count Two alleges that Defendant retaliated against Relator for reporting its fraudulent behavior and refusing to take part in its fraudulent acts. Am. Compl. ¶¶ 102–06.

### i. *Stating a retaliation claim*

To state a claim for retaliation under 18 U.S.C. § 3730(h)(1), a relator must allege that they (1) "engaged in protected activity," and (2) "experienced discrimination 'because of'" that activity. *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422 (D.C. Cir. 2005) (quoting 31 U.S.C. § 3730(h)). "The purpose of this provision" is "to 'assure those who may be considering exposing fraud that they are legally protected from retaliatory acts.'" *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998) (quoting S. Rep. No. 99-345 at 34 (1986)).

First, to plead engagement in protected activity, a plaintiff must allege they were "investigating matters that reasonably could lead to a viable [FCA] case." *Hoyte*, 518 F.3d at 66 (formatting modified). This element "does not require the plaintiff to have developed a winning qui tam action before he is retaliated against," but their investigation "must concern false or fraudulent claims," not just "his employer's non-compliance with federal or state regulations." *Yesudian*, 153 F.3d at 739–40. This inquiry is "fact specific." *Shekoyan*, 409 F.3d at 423 (citation omitted).

The D.C. Circuit in *Yesudian*, for example, concluded that the relator was engaged in an investigation that reasonably could lead to a viable FCA case because he repeatedly told his supervisors at Howard University that he had evidence of an employee falsifying time and attendance records, providing inside information to vendors to aid them in bidding, accepting bribes from vendors, paying vendors who did not provide services to the university, and taking property home for personal use. 153 F.3d at 740. Even though there was no direct evidence of submitting false claims to the government, the court concluded that the relator would have had a "good faith basis" to bring a FCA claim because he "knew that 80% of Howard's money came from the United States Government." *Id.*

By contrast, the D.C. Circuit concluded that an employee was not engaged in protected activity where the complaints he raised with his supervisor were based on being denied the use of project vehicles, not that others were engaged in fraudulent conduct by using these vehicles for personal reasons. *Shekoyan*, 409 F.3d at 423. Similarly, in *Hoyte*, the D.C. Circuit concluded that the employee's "investigation was into mere regulatory noncompliance," not false claims. 518 F.3d at 68.

Second, to plead that they experienced discrimination "because of" their protected activity, a relator must show that their "employer had knowledge" that they were "engaged in protected activity" (the intent requirement) *and* that "retaliation was motivated, at least in part, by the employee's engaging in that protected activity" (the causation requirement). *Yesudian*, 153 F.3d at 736 (formatting modified). "[T]he kind of knowledge the defendant must have" to fulfill the intent requirement "mirrors the kind of activity in which the plaintiff must be engaged." *Id.* at 742. And to fulfill the causation requirement, the relator must allege that their protected activity was a motivating factor in an adverse employment action. *See Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (citing *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)) (applying the causation standard used for Title VII, the Americans with Disabilities Act, and the Rehabilitation Act to the FCA's retaliation provision).

    ii.    *Relator failed to state a claim for retaliation*

Relator's retaliation claim under the FCA fails because Relator was not engaged in protected activity. He alleges three instances of protected activity: (1) investigating the reports in his Complaint and reporting them to Defendant; (2) assisting his counsel in preparing the Complaint; and (3) preparing to disclose Defendant's scheme to government officials. Am. Compl. ¶ 103. But all of these activities concerned potential statutory and regulatory violations,

which do not give rise to a FCA action. *Supra* Section III.A.ii. Thus, because the conduct Relator was investigating "could not have reasonably led to a viable claim under section 3729 of the FCA," his "investigation of it was not protected activity" that could "support a retaliation claim" under § 3730. *Hoyte*, 518 F.3d at 68.

Relator claims that *Singletary v. Howard University*, 939 F.3d 287, 296 (D.C. Cir. 2019), supports his claim that he was engaged in protected activity because he had "an objectively reasonable belief that" Defendant was violating the FCA. Opp'n at 42–44. Relator's argument, however, refers to a different "prong" of the protected activity analysis than his Amended Complaint does—that is, Relator argues he was seeking to prevent future violations of the FCA, rather than investigating existing violations. *See id.*; *Singletary*, 939 F.3d at 236 (explaining that this "prong" "is met as long as the employee has an objectively reasonable belief that the employer is violating, or will violate, the False Claims Act"). Thus, the allegations in the Amended Complaint do not support the theory that Relator was trying to prevent Defendant from violating the FCA rather than investigating violations. *See* Am. Compl. ¶¶ 102–06. In any event, *Singletary* held that the relator's complaints "went far beyond grumbling about regulatory violations" because she was attempting to prevent Howard from submitting false claims of animals' conditions to the government that would be "necessary for Howard to receive and retail" federal funding. 939 F.3d at 302–03. Relator's allegations, however, do not go "far beyond" "regulatory violations." Thus, that Singletary had an "objectively reasonable belief" that her employer was violating the FCA does not say the same for Relator in this case.

In sum, Relator failed to allege that he was engaged in protected activity under the FCA. Thus, he cannot state a retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the court will GRANT Defendant's Motion to Dismiss, ECF No. 24.  An Order will accompany this Memorandum Opinion.

Date: February 7, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge